July 8, 2026

**Supreme Court**

No. 2025-121-Appeal.
(P 09-1898)

Michele B. Codere-Wilson       :

v.       :

Craig S. Wilson.       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michele B. Codere-Wilson      :

v.      :

Craig S. Wilson.      :

Present: Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ.

## O P I N I O N

**Justice Robinson, for the Court.** The defendant, Craig S. Wilson,[1] appeals from an April 16, 2025 order of the Family Court, which awarded the plaintiff, Michele B. Codere-Wilson, one-half of Craig's pension pursuant to the Property Settlement Agreement (PSA) in the underlying divorce action. Before this Court, Craig contends (1) that Michele's motion to reopen the divorce was not timely under G.L. 1956 § 9-1-13;[2] (2) that the Family Court erred in ordering him to specifically perform in accordance with the terms of the PSA entered into at the time of the divorce; (3) that "the Property Settlement Agreement does not call for a second

---

[1]      We shall refer to the parties by their first names to avoid any confusion. No disrespect is intended.

[2]      General Laws 1956 § 9-1-13(a) provides: "Except as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after."

Qualified Domestic Relations Order;" and (4) that "[t]he PSA was effectively reformed by the [c]ourt absent a finding of mutual mistake and without the parties' consent."

This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and after carefully reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.

For the reasons set forth in this opinion, we affirm the order of the Family Court.

**I**

**Facts and Travel**

This case requires us to review a post-final judgment proceeding in the Family Court. Michele and Craig were married in 1980. On August 24, 2009, Michele filed for divorce, citing irreconcilable differences. On February 4, 2010, the parties entered into and signed a Property Settlement Agreement. Paragraph Fourteenth of that agreement states in pertinent part:

> "The parties have the following Retirement Plans, IRAs, Annuities and other accounts:
>
> "(1) Husband has a fully vested retirement plan through his employer/union. Husband shall cause one-half of said plan to be transferred to the Wife by way of a Qualified

- 2 -

Domestic Relations Order as of the date of the entry of Final Judgment. The parties shall cooperate with preparation and finalization of said Qualified Domestic Relations Order."

It is uncontested that, at the time of the parties' divorce, Craig's union retirement plan was comprised of both a pension and an annuity component.

On February 4, 2010, a nominal hearing in the divorce action was held in the Family Court. On February 18, 2010, a Decision Pending Entry of Final Judgment was entered. In that decision, the trial justice found the PSA to be fair and equitable, and she granted the parties' nominal divorce.

On May 6, 2010, final judgment was entered. The parties' PSA was incorporated, but not merged, into the final judgment. On the same day, a qualified domestic relations order (QDRO) was entered "to accomplish the division" of Craig's defined contribution annuity plan. There was no QDRO entered with respect to Craig's pension.

In December of 2014, Craig suffered a stroke occasioning his retirement. It is undisputed that Craig began receiving his pension benefits on June 1, 2015. On December 19, 2023, Michele filed a motion in the Family Court to reopen the divorce action "for the purpose of entering a Qualified Domestic Relations Order" in order to "assign to [Michele] her one half share of [Craig's] pension * * *." On February 12, 2024, Craig objected to that motion. On March 7, 2024, after a bench conference, the Family Court issued an order that granted the parties time to conduct

- 3 -

discovery and to file memoranda of law before a further hearing on the merits would be held.

On May 19, 2024, Michele filed a motion for specific performance. Michele contended that, at the time of the February 4, 2010 hearing on the parties' nominal divorce, Craig had an annuity and a pension and that Paragraph Fourteenth of the PSA provided that Michele "was entitled to one-half of the value of [Craig's] retirement plan by way of a [QDRO] as of the date of the entry of Final Judgment." Michele further noted that a QDRO had been prepared with respect to Craig's annuity. She also noted that "for some reason a QDRO was never prepared" with respect to Craig's pension. Michele requested that "a QDRO be prepared and entered with the Family Court to assign to [Michele] her one half share of [Craig's] pension * * *." Michele also requested that Craig "be ordered to pay, forthwith and in one lump sum, one-half of all of the pension payments that he has received from [his pension]." On May 20, 2024, Craig filed an objection to that motion.

On August 13, 2024, a hearing on Michele's motion took place before a general magistrate of the Family Court. On September 16, 2024, the general magistrate issued a written decision, in which decision he found that Michele's action was timely under § 9-1-13 because the cause of action for breach of the PSA accrued "when [Craig] began receiving his union pension benefits on June 1, 2015 and failed to pay [Michele] her portion thereof." The general magistrate further

found that the language contained in Paragraph Fourteenth of the PSA "is unambiguous and not reasonably susceptible of different constructions." The general magistrate's decision also stated: "The parties' intention was to divide the entirety of [Craig's] retirement plan to include the entirety of [Craig's] defined benefit pension and [Craig's] defined contribution annuity equally, as they did with all other assets of the marriage." The general magistrate's rulings, based on his findings of fact, included the following:

> "1. The parties' marital settlement agreement awarded [Michele] one-half of the marital portion of [Craig's] pension.
>
> "2. [Craig] has breached the terms of the marital settlement agreement.
>
> "3. [Michele's] motions are granted.
>
> "4. A QDRO shall be prepared and entered forthwith to divide the marital portion of [Craig's] defined benefit pension plan per the terms of the marital settlement agreement.
>
> "5. Commencing forthwith and with each pension payment [Craig] receives hereafter, [Craig] shall pay to [Michele] directly her marital portion of [Craig's] pension with the union until a QDRO is effectuated.
>
> "6. [Craig] shall reimburse [Michele] the total amount of her marital portion of pension payments he received from June 1, 2015 to present.
>
> "7. [Michele's] request for attorney fees is denied. The marital settlement agreement does not contain a provision for attorney fees."

On October 15, 2024, an order was entered consistent with the above-referenced September 16, 2024 decision. On September 30, 2024, Craig appealed the decision of the general magistrate to the Chief Judge of the Family Court pursuant to Rule 73 of the Family Court Rules of Domestic Relations Procedure. On October 17, 2024, Craig filed a second Rule 73 notice of appeal to the Chief Judge with respect to the October 15 order.

On March 7, 2025, a hearing was held before a justice of the Family Court, at the conclusion of which, the hearing justice affirmed the decision of the general magistrate, stating:

> "This [c]ourt finds that the Statute of Limitations did not start to run until such time as [Craig] received his benefits. The [c]ourt finds that the General Magistrate's decision applied the law correctly, and there's no mistake of fact or law. As such, this [c]ourt affirms the decision of [the] General Magistrate * * *."

On April 16, 2025, an order consistent with the just-quoted decision of the justice of the Family Court was entered, from which Craig filed a timely notice of appeal.

## II

## Issues on Appeal

Before this Court, Craig contends: (1) that Michele's action is barred by the provisions of § 9-1-13;[3] (2) that the Family Court erred when it ordered him to

---

[3] *See* footnote 2, *supra*.

specifically perform in accordance with the parties' PSA; (3) that "the Property Settlement Agreement does not call for a second Qualified Domestic Relations Order;" and (4) that "[t]he PSA was effectively reformed by the [c]ourt absent a finding of mutual mistake and without the parties' consent."

### III

### Standard of Review

It is well settled that "[o]ur review of a Family Court justice's decision is deferential." *Capaldi v. Capaldi*, 295 A.3d 822, 826 (R.I. 2023) (internal quotation marks omitted). This Court "will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." *Giarrusso v. Giarrusso*, 204 A.3d 1102, 1106 (R.I. 2019) (quoting *Bober v. Bober*, 92 A.3d 152, 157 (R.I. 2014)).

### IV

### Analysis

### A

### The Statute of Limitations Issue

Because the statute of limitations issue could be dispositive of the issues before us, we turn to that threshold question. The parties agree that § 9-1-13 applies to the instant action; however, they disagree as to when the statute's ten-year limitations period commenced.

Craig contends that the ten-year statute of limitations began to run on May 6, 2010, the date when final judgment was entered. He posits that the Family Court erred in finding that the pertinent statute of limitations began running on the date of the breach of the PSA given his view that he could not have breached the PSA "as it does not call for a second QDRO." It is Craig's position that "[b]ased on the language in the PSA, only one of [his] retirement plans was contracted for, [which] was made clear when only one QDRO was entered to distribute the asset." Citing *Capaldi*, 295 A.3d at 826, Craig further suggests that the pension was in essence a newly discovered asset and that Michele's claim to it was untimely because she had ample opportunity to learn about the pension through the discovery process. In the alternative, Craig contends that "even if this is not a newly discovered asset, the asset was still not contracted for in the PSA as [Michele] asserts." For those reasons, he argues that Michele's December 19, 2023 motion to reopen the divorce action is time-barred. In contrast, Michele contends that the Family Court correctly ruled that the statute of limitations did not begin to run until June of 2015, when Craig first began to receive his pension and failed to pay her any portion of that pension.

In order to resolve the statute of limitations issue, we first address whether the terms of the PSA are ambiguous. A property settlement agreement that is incorporated but not merged into the final judgment of a divorce action "retains the characteristics of a contract * * *." *Robayo v. Robayo*, 310 A.3d 369, 375 (R.I. 2024)

(quoting *Giarrusso*, 204 A.3d at 1107). It is well settled that, when interpreting the provisions of a contract, "[i]f the parties' intention can be clearly inferred from the terms and express language of the contract, then that intention governs." *Id.* (internal quotation marks omitted). However, if a provision of a contract is reasonably susceptible of different constructions, then it is ambiguous. *Id.* When we are called upon to construe the terms of a contract, "we attempt to ascertain the intent of the parties." *Id.* (internal quotation marks omitted). We have stated that "[i]n the absence of ambiguity, the interpretation of a contract is a question of law." *Id.* (quoting *Morgan v. Bicknell*, 268 A.3d 1180, 1184 (R.I. 2022)); *see also Gorman v. Gorman*, 883 A.2d 732, 738 n.8 (R.I. 2005).

It is our view that the Family Court did not err in finding that the provisions of Paragraph Fourteenth were unambiguous and evinced a clear intention on the part of both parties to equally divide the entirety of Craig's "retirement plan." While Paragraph Fourteenth (1) of the PSA does not specifically use the words "pension" or "annuity" in addressing Craig's retirement plan, the PSA clearly provides:

> "Husband has a fully vested retirement plan through his employer/union. Husband shall cause one-half of said plan to be transferred to the Wife by way of a Qualified Domestic Relations Order as of the date of the entry of Final Judgment."

In our view, the specific reference to "a fully vested retirement plan" makes it clear that the entirety of that plan was intended to be the subject of the 50-50 division

- 9 -

referenced in the PSA. Accordingly, we agree with the Family Court that the PSA (specifically, Paragraph Fourteenth) requires that, in addition to the equal division of the annuity, Craig's pension was to be equally divided—since both are part of Craig's "retirement plan."

We additionally note that Craig's reliance on *Capaldi* to support his contention—that the pension is a newly discovered asset and that Michele's claim is therefore barred by the statute of limitations—is misplaced. In *Capaldi*, the former wife discovered that her ex-husband had a pension after the parties had signed the property settlement agreement, which was incorporated and merged into the final judgment. *Capaldi*, 295 A.3d at 824-25. The property settlement agreement at issue in that case made no mention of the pension. *Id.* at 824. The former wife sought to reopen the final judgment of divorce to award her one-half of the marital portion of the pension. *Id.* at 825.

In *Capaldi*, this Court held that, because the former wife had not sought to reopen the judgment until twenty-four years after the entry of said judgment, the action was barred by the twenty-year statute of limitations that was applicable in that case—*viz.*, § 9-1-17. *Capaldi*, 295 A.3d at 826-27. This Court reasoned that the former wife had an opportunity to conduct discovery and seek disclosure of her former husband's assets prior to the nominal hearing. *Id.* at 827.

The facts of *Capaldi* are therefore distinguishable from the facts of the instant case. In this case, Michele was seeking to reopen the divorce action to obtain an asset concerning which she and Craig had already reached an unambiguous contractual agreement—namely, the PSA, which clearly speaks of a 50-50 division of Craig's "retirement plan." Simply put, the terms of the PSA required Craig to distribute to Michele one-half of his "retirement plan," the components of which were the annuity and his union pension. Unlike the situation in *Capaldi*, the terms of the PSA in the instant case had been contractually agreed to; the pension plan at issue is therefore not a newly discovered asset.[4]

Having addressed the unambiguous terms of the contractual PSA between Craig and Michele, we now turn to the statute of limitations issue. As the parties have agreed, civil actions relative to property settlement agreements such as the one at issue in this case—i.e., one that is incorporated but not merged with the final judgment—are governed by § 9-1-13. That statute provides in pertinent part that "all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue * * *." Section 9-1-13(a). We have stated that "a cause of action accrues and the applicable statute of limitations begins to run at the time of the injury

---

[4] We note that Craig testified that the PSA included all of his retirement accounts and that the parties had intended to equally divide all marital assets. Michele's testimony further confirmed that the intention of both parties was to divide all marital assets in a 50-50 manner.

- 11 -

to the aggrieved party." *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 600 (R.I. 2019) (quoting *American States Insurance Company v. LaFlam*, 69 A.3d 831, 840 (R.I. 2013)).

In the case at bar, it is our view that the Family Court correctly determined that Michele's cause of action accrued when Craig began receiving his pension benefits on June 1, 2015 and subsequently failed to pay Michele her portion thereof as was required under the terms of the PSA. At the time final judgment was entered in 2010, Craig was not receiving any portion of his pension benefits. As a result, Craig was not in breach of the terms of the PSA until June of 2015 when he began receiving the pension benefits. Therefore, Michele's financial injury was incurred, and her cause of action started to accrue, in June of 2015. Consequently, Michele's December 2023 motion to reopen the divorce was timely, as it was filed on December 19, 2023, within ten years of June 1, 2015.

**B**

**The Terms of the PSA**

Having resolved the timeliness issue, we turn to Craig's contentions regarding the terms of the PSA. It will be recalled that Craig argues that the Family Court erred in ordering him to distribute one-half of his pension funds to Michele because, in his view, that asset "was not contracted for and never divided by a [QDRO] at the

time of the divorce." It is Craig's contention that the Family Court erred in ordering him "to specifically perform in conformity with the PSA."

We have stated that "since [a] nonmerged separation agreement has the characteristics of a contract and not a court judgment, the remedy for a party aggrieved by nonperformance of the contract is to sue for specific performance in a breach of contract action." *Riffenburg v. Riffenburg*, 585 A.2d 627, 630 (R.I. 1991). As we have already established, the parties clearly intended for the equal division of all marital assets, including the pension portion of Craig's retirement plan. Consequently, Craig's retention of the entirety of his pension beginning in June of 2015 constituted a disregard of the specific terms of the PSA. It is therefore our view that the general magistrate was fully justified under the above-described circumstances when he ordered that the terms of the PSA be specifically performed.

Additionally, Craig contends that the Family Court's order of April 16, 2025 impermissibly "reformed the original PSA absent a finding of mutual mistake" when it ordered the entry of a second QDRO. For her part, Michele asserts that the Family Court did not reform the terms of the PSA and that the "[b]ottom line is that the division of the pension component of Craig's retirement plan needs to be effectuated forthwith, and the Family Court's Orders do just that." (Emphasis omitted.)

Because a property settlement agreement which is not merged into the final decree of divorce retains the characteristics of a contract, it can be subject to judicial

reformation only if both parties consent to the modification. *Gorman v. Gorman*, 883 A.2d 732, 740 (R.I. 2005). We have stated that "[a]bsent the consent of the parties or one of the recognized bases for reformation, the Family Court does not have the authority to reform or modify a contractual property settlement agreement that is incorporated by reference in (but not merged into) the final divorce judgment." *Id.* at 741. While a mutual mistake is often cited as a basis for judicial reformation, this Court has expressly acknowledged that "[o]ther circumstances * * * can sometimes provide a basis for judicial reformation * * *." *Id.* at 741 n.15.[5]

In the instant case, we are unpersuaded by Craig's contention that the order of the Family Court directing him to distribute to Michele her share of his pension improperly modified or reformed the PSA. It is clear to us that the Family Court's ordering that another QDRO be entered to divide the marital portion of Craig's pension was necessary to accurately reflect and effectuate the mutual intention of the parties. In ordering a second QDRO to be entered, the Family Court was not in actuality changing the terms of the PSA but rather enforcing *the already existing*

---

[5]     This Court in *Gorman v. Gorman*, 883 A.2d 732 (R.I. 2005), specifically stated that, in addition to mutual mistake, "[o]ther circumstances * * * can sometimes provide a basis for judicial reformation * * *." *Gorman*, 883 A.2d at 741 n.15. The *Gorman* opinion then proceeded to approvingly quote language from a respected legal encyclopedia to the effect that "fraud or *inequitable conduct* on the part of" one of the contracting parties can be a basis for judicial reformation. *Id.* (quoting 66 Am. Jur. 2d *Reformation of Instruments* § 1 at 226-27 (2001)) (emphasis added).

*terms of the PSA*, with which Craig had failed to fully comply. Accordingly, it is our opinion that the Family Court did not err in ordering Craig to prepare a QDRO to divide his pension in accordance with the terms of the PSA.

**V**

**Conclusion**

For the reasons set forth in this opinion, we affirm the order of the Family Court. The record may be returned to that tribunal.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Michele B. Codere-Wilson v. Craig S. Wilson. |
| **Case Number** | No. 2025-121-Appeal. (P 09-1898) |
| **Date Opinion Filed** | July 8, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, Long, and Flaherty (ret.), JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Merola |
| **Attorney(s) on Appeal** | For Plaintiff: Sean P. Keough, Esq. |
| | For Defendant: Karen Auclair Oliveira, Esq. |